## Wilbur Richardson, Appellee, v. Wells Brothers Company, Appellant.

### Gen. No. 15,453.

1. PLEADING—*when declaration sufficient after verdict.* A declaration which states defectively a good cause of action is sufficient after verdict.

2. INSTRUCTIONS—*when upon doctrine of assumed risk not erroneous.* An instruction which states to the jury that the servant does not assume risks growing out of the negligence of the master is not erroneous where there is no evidence that the servant had reason to anticipate danger from the acts which resulted in his injury.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed January 3, 1911. Rehearing denied January 23, 1911.

F. J. CANTY, E. E. GRAY and R. J. FOLONIE, for appellant.

EDWARD MAHER and GUERIN, GALLAGHER & BARRETT, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

This was an action on the case for personal injuries sustained by Wilbur Richardson while in the employment of Wells Brothers Company. Appellee, the plaintiff, recovered a judgment in the Superior Court of Cook county, and appellant, the defendant, now seeks a reversal of the same.

The plaintiff at the time he received the injuries of which he complains was at work wrecking an alley about thirty feet wide, extending north and south from Randolph to Washington streets, between the old and new structures of the Marshall Field building. The space underneath the alley, called a basement, was used for storage or subway purposes. The surface of the alley, being the roof of the basement, was

supported by six-inch cast iron columns, twelve to fifteen feet high, through the center of the alley, about fifteen feet apart north and south. On these columns a steel header beam rested. From the header beam extended cross beams east and west, about six feet apart, at right angles to the header beam, the east and west ends resting in stirrups. Between these cross beams were brick arches covered with concrete with a top dressing of asphalt, which was the surface of the alley. These arches were, according to some witnesses, eight to twelve inches thick, and according to others twelve to fifteen inches thick.

Along the center of the alley, beginning at the third column, cribbing consisting of six by six inch blocks four feet long was built at the side of the columns. This cribbing reached to the header beam, except the three south ones, which did not reach the beam by six inches. The east ends of the cross beams were supported by drums made of six-inch timber with jack screws at each end. The space, about fifteen feet square, between the header beams and the east or the west side of the alley and the cross beams extending east or west from the columns, was called a panel—making an east and west row of panels through the alley. The arches of the southwest panel had been broken down the forenoon of the accident with pick-axes and mauls. Then with a derrick and boom a steel beam weighing about eighteen hundred pounds had been lowered into this open space and used as a ram to break loose the columns. In this way three of the columns were broken and hung suspended when the beam was raised up above the surface of the alley and used to drop on the adjacent panel of the alley to break down the arches. The beam had been dropped several times on this panel—some said for a half hour —when the superintendent, about two o'clock in the afternoon, called the plaintiff and said, ''Richardson, pull this boom around.'' Richardson, a structural iron worker, had begun working at this alley that morning

taking out the "walk lights" in the east side of the alley, beginning at the south end of the alley and working north. When the superintendent ordered him to help pull the boom around he left his work and walked south fifteen or twenty feet and took hold of the tag line by which the boom was guided. Richardson helped pull the boom around, let go of the line, turned and started back to his work. As he started back the beam was dropped and the panel went down with about four others to the north, plaintiff falling in the basement with brick and concrete, receiving serious injuries. This in a general way describes the situation as we understand it. It appears that the brick arches, the foundation of the alley surface, were supported by a frame work of columns and cross beams. Of course the more this frame work was bent down the greater the tendency to loosen and destroy the brick arches, and it would seem that the superintendent, in the exercise of ordinary care, would have known this. Richardson had only worked there that day; his work had been confined to taking out the lights in the east side of the alley. He had not been down in the basement, and there had been no occasion for him to go down; he did not know of the columns being loose and the short cribbing or the cutting of the tie rods and stirrups, the construction of the brick arches, or anything of the nature of the structure underneath. Neither did the situation up to that time appear such that in the exercise of ordinary care on his part he would leave his work to go down into the basement to make an examination of the same.

The first count among other allegations avers that the plaintiff was employed by the defendant; that the work then being done was necessary work; that plaintiff was then and there engaged in its work, etc.; the plaintiff had no knowledge of the danger, etc.; that the defendant did the work negligently, etc., and without warning, etc., to the plaintiff of the danger, etc. Defendant contends that this count does not state a

cause of action.  The defendant did not demur to same, but pleaded the general issue.  The point relied upon "that it contains no allegation whatever that the plaintiff had any business or right at the place where he was hurt," under the authorities Mackey v. N. M. Co., 210 Ill. 115, and McAndrews v. Ry. Co., 222 Ill. 232, we think is not well taken.  We do not think it can be successfully contended that this count states a defective cause of action, and it is good after verdict.    Grace & Hyde Co. v. Sanborn, 225 Ill. 138; Chenoweth v. Burr, 242 Ill. 312.

In our opinion the proof supports the first count. It is therefore not necessary to consider the sufficiency of the second count.

The defendant next complains of the fourth and fifth instructions given on behalf of plaintiff.

The fourth instruction pertains to the assumption by the servant of the ordinary risks incident to his employment.    Objection is made especially to that portion of the instruction which states that the servant does not assume the risk growing out of the negligence of the master, relying upon the authority Kath. v. East St. L. S. Ry. Co., 232 Ill. 126, where a similar instruction was held erroneous.  In that case there was evidence that the plaintiff had knowledge for several months prior to the accident of the defect complained of as the master's negligence, and we do not think it is in point.  The case at bar seems to fall within the rule announced in Williams v. Morris, 237 Ill. 254, where the evidence, as in the case at bar, showed that the plaintiff had no knowledge of the defect, and in which the court say, pp. 260-1: "A servant only assumes the usual and ordinary risks of the employment in which he is engaged, and not extraordinary hazards which may arise in the course of his employment from the negligence of the vice-principal of the master and of which he has no notice and from which he has no reasonable grounds, from the employment in which he is engaged, to fear danger of an oppor-

tunity to protect himself from injury.'' While it is true plaintiff was engaged in the wrecking of the alley, yet at the work in which he was engaged at the time there was no evidence showing any reason why he should anticipate any danger to himself. It seems to us the distinction on the point urged by the defendant is clearly expressed in Klofski v. Railroad Supply Co., 235 Ill. 146. On page 156 the court say: ''The master's negligence is not an ordinary and usual risk of the employment, hence a servant does not assume dangers arising therefrom by his contract of hiring, but the servant, knowing of such negligence, may assume the risk, and in such cases he assumes it because he knows of it and not because it has become an ordinary one.''

The court instructed the jury at the request of the defendant, in at least four different instructions, in substance that if they believed from the evidence that the plaintiff at and before the time of the accident knew, or by the exercise of ordinary care on his part could have known, of the danger of being injured as shown by the evidence, he assumed the risk of such danger and could not recover. We conclude that under the evidence in this case there was no error in giving instruction four.

It is claimed instruction five was misleading. It announced a correct proposition of law, and we think under the evidence was properly given; but if not, we can see no harm in it to the defendant.

The judgment of the Superior Court will be affirmed.

*Affirmed.*